IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 1:15-CV-000395-RBJ

GATEWAY TOWNHOMES ASSOCIATION, INC.

      Plaintiff,

v.

THE TRAVELERS INDEMNITY COMPANY

      Defendant.

---

**PLAINTIFF GATEWAY TOWNHOMES ASSOCIATION, INC.'S
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**BARTON LAW FIRM**

Daniel P. Barton
Wayne Collins
1201 Shepherd Drive
Houston, Texas 77007
(713) 227-4747 (phone)
(713) 621-5900 (fax)
E-mail: dbarton@bartonlawgroup.com
E-mail: wcollins@bartonlawgroup.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      STATEMENT OF FACTS .............................................................................1

II.     ARGUMENTS & AUTHORITIES .............................................................4

        A. Gateway is the Real Party in Interest .............................................4

             *1.* Defendant has not plead proper relief and has Waived any Objection to Gateway prosecuting the suit on its own behalf. ..............................................5

             *2.* An entire assignment was not made. ....................................8

             *3.* Edge has ratified the fact that Gateway has the authority to prosecute the suit in its own name. ..............................................8

             *4.* The condition precedent to trigger assignment has not yet occurred. .............10

        B. Lack of Prejudice ..............................................................10

        C. Plaintiff Complied with Policy Conditions ......................................12

        D. Gateway Proved its Damages-The Existing codes in effect in the City of Aurora result in an increased cost to repair Plaintiff's damaged property and these code requirements have been enforced, triggering coverage. ..............................................13

        E. Plaintiff Timely Raised Code Compliance ......................................15

# TABLE OF AUTHORITIES

*Cases*

*Audio-Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 718-19 (10th Cir. 1976). ................9

*Craft v. Philadelphia Indemnity Insurance Company,* 343 F.3d 951 (S Ct. Colo. 2015). ................10

*Dupre v. Allstate Insurance Company*, 62 P.3d 1024, 1028 – 1029 (Colo. App. 2003). ................14

*Friedland v. Travelers Indem. Co*., 105 P.3d 639, 643 (Colo. 2005). ...........................10

*Hoeppner Const. Co. v. U.S. for use of E.L. Mangum, et al.*, 287 F.2d 108, 111 (10th Cir. 1960). ..........5

*Navajo Freight Lines, Inc. v. Moore*, 170 Colo. 539, 543, 463 P.2d 460, 462 (1970). ...............14

*Strader v. Beneficial Fin. Co*., 191 Colo. 206, 551 P.2d 720 (1976). ..............................14

*Rakin v. Fidelity Nat. Property & Casualty Inc. Co.*, 863 F.Supp.. 1107, 1112 (D. Colo. 2012). ...14

Fed. R. Civ. P. 17(a). ....................................................................................................5

**PLAINTIFF GATEWAY TOWNHOMES ASSOCIATION, INC.'S
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Gateway Townhomes Association, Inc. ("Gateway"), through its attorneys, and submits the following Response to Defendant's Motion for Summary Judgment pursuant to F.R.C.P. 56.

## I.
## STATEMENT OF FACTS

1.     Plaintiff admits Undisputed Facts number 1-4, and 6-7.  The Plaintiff disputes facts as presented in the Undisputed Facts 5 and 8-32.  The property located at 14330 – 14472 E. Mississippi Ave was insured by Travelers, under Policy number I-680-294M7088-IND-11 (the "Policy") for the policy period November 5, 2011 through November 5, 2012.[1]

2.     On June 6, 2012, the property was damaged by a wind/hail storm.[2]

3.     The policy contains an endorsement for Ordinance or Law Coverage which provides a limit of insurance of $250,000 or $500,000 depending on which coverage is applicable under the endorsement.[3] The language of the endorsement is included below.

4.     Travelers accepted coverage on the damages sustained as a result of the June 2012 storm and allowed for full replacement of the membrane TPO roof, as well as full replacement of the mansard portion of the roof on all four buildings.[4]

---

[1] Exhibit "A" Policy of Insurance p. 2.

[2] Exhibit "B" Travelers Claim Acknowledgment (TIC 000205).

[3] Exhibit "A" Policy of Insurance p. 16.

[4] Exhibit "C" Travelers Estimate.

5.      The membrane portion of the roof was replaced due to damage from hail. The mansard portion of the roofs were replaced due to damage from wind.[5] No dispute exists regarding coverage for these two items.

6.      Plaintiff did not make a claim for damages from wind or hail as to the three remaining Built-Up-Roof ("BUR"), nor did Plaintiff make a claim for damages to the interior of the buildings.

7.      Following Travelers' acceptance of coverage on the membrane portion of the roof and the mansards, Plaintiff hired Edge Construction to perform the repairs to the TPO roof.

8.      During adjustment of the claim, due to a question as to when the loss took place (which was later resolved and not at issue for purposes of this motion), Travelers hired Case Forensics to provide analysis and a report. Case's report found hail and wind damage.[6]

9.      Plaintiff's hired Public Adjuster Peter Ridulfo, who observed the repair process while it was ongoing, and was on site while Edge Construction was performing the replacement of the mansards and the membrane roof.[7]

10.      On June 27, 2014, Travelers noted that the City of Aurora had an issue with the "flashing between the termination of the flat roof and the mansard roof.[8] Travelers estimated the

---

[5] Exhibit "D" Travelers Claim Notes; also Exhibit "E" CASE Forensics' report.

[6] Exhibit "E" CASE Forensics' report.

[7] Exhibit "F" Affidavit of Peter Ridulfo.

[8] Exhibit "D" Claim Notes p. 6 (TIC 000184 - 000185).

amount to comply with the City to be $35,188.48.[9] Travelers did not maintain that this "Ordinance additional cost" was not covered.[10]

11.     On July 29, 2014, Plaintiff's Public Adjuster Peter Ridulfo notified Travelers that there were outstanding items that required attention due to the City Codes.[11] Travelers' notes state that "[f]rom our perspective the claim was estimated and paid."[12] Travelers then requested documentation as to each code item being claimed.[13]

12.     On August 21, 2014, Travelers re-inspected the building with Mr. Ridulfo, noting its belief that the repairs were properly scoped and there are no pending code issues.[14]

13.     On December 12, 2014, Travelers' Adjuster Brad DuPuis notified Mr. Ridulfo that they disagree that any additional repairs are necessitated by the code, and that they had issued sufficient payments to address the loss.[15]

14.     The mansard portion of the roofs on all four buildings were damaged by wind and required full replacement. The membrane roof on one of the buildings was damaged by hail and required full replacement. The project is governed by the City of Aurora Building Codes, which adopted the 2009 International Building Code.[16]

---

[9] *Id*. at TIC 000185.

[10] *Id*.

[11] *Id*. at TIC 000183.

[12] *Id*.

[13] *Id*.

[14] *Id*. at TIC 000183.

[15] Exhibit "G" Email from Brad DuPuis to Peter Ridulfo (TIC 000612)

[16] Exhibit "K" Affidavit of Thomas J. Irmiter, Attachment B-1, at pp. 2, 5 - 6 and 14.  City of Aurora Buildings and Building Regulations Chapter 22, Art. IV, Sec. 22-131 ("The international Building Code, 2009 Edition, first printing, dated February 2009, published by the International Code Council, Inc., including appendix chapters C,E,I, published by the International Code Council, Inc. is hereby adopted.") via

3

15.     Beyond the $35,188.48 paid by Travelers to address part of the flashing issue raised by the City, Travelers has issued no payments with regards to additional repairs under the Law and Ordinance Endorsement, nor has Travelers accepted coverage as to these additional repairs or promised payment if the repairs are completed.

16.     On October 13, 2015, Travelers issued a subpoena to the City of Aurora, who subsequently produced their documentation with regards to this claim.[17] Specifically contained in that documentation delivered to Travelers was a Violation Notice regarding the roof being in violation of the City Code.[18]

17.     While not relevant to the Plaintiff's claims or the Defendant's defenses or Defendant's Motion for Summary Judgment, the issue raised in Footnote 1, of Defendant's Motion for Summary Judgment, is no longer the case.[19]

No assignment of the entire claim has occurred. Edge asserts no rights as an assignee and agrees Gateway has authority to pursue the claims.[20] The repairs are not substantially complete.[21]

## II.
## ARGUMENTS & AUTHORITIES

### A.     Gateway is the Real Party in Interest

---

https://www.municode.com/library/co/aurora/codes/building_and_zoning?nodeId=BUILDING_ZONING_CODE_CH22BUBURE_ARTIVINBUCO_S22-131COAD (last visited 2/17/2016)

[17] Exhibit "H" Subpoena to City of Aurora.

[18] Exhibit "I" Violation Notice. See also Exhibit "P."

[19] Ex. M. Affidavit of David Greeson.

[20] Ex. L.  Affidavit of David Greeson.

[21] *See* Deposition Transcript of Dustin Wade Greeson, attached hereto as Ex. O at 108:8-108:22 113:25-114:6; 114:7-114:21

If it were Edge Construction's position that Edge, and not Gateway, is the real party in interest, or that Gateway does not have standing to bring this suit for benefits under its own policy, Edge Construction would have said so. Edge Construction has taken no such position, and as the alleged "assignee," states unequivocally Gateway has the authority under the contract to prosecute the instant lawsuit, has ratified the proceeding, and otherwise repudiated any claim it may have to the litigation over Gateway.[22]

Additionally, in the event there were any assignment, that assignment pertains only to unpaid insurance proceeds due for work already performed, which is not an assignment of the entire claim. Also, the condition precedent to trigger assignment has not yet occurred. Moreover, Defendant's requested relief is improper under both Tenth Circuit precedent and Rule 17(a)(3) itself, and is rendered moot by Edge's ratification. For these reasons, Defendant's motion is without merit and should be denied.

### 1.   *Defendant has not plead proper relief and has Waived any Objection to Gateway prosecuting the suit on its own behalf*.

Rule 17(a) requires that every action be prosecuted in the name of the real party in interest. FED. R. CIV. P. 17(a). The question of whether an assignor or an assignee of an assigned claim is the real party in interest with sufficient right to enable him to maintain an action thereon is controlled by the substantive law of Colorado. *Hoeppner Const. Co. v. U.S. for use of E.L. Mangum, et al.*, 287 F.2d 108, 111 (10th Cir. 1960). It is the law in Colorado that where a claim has been assigned *in full*, the assignee is the real party in interest. *Id*. If an assignor has not assigned the entire claim, he can still maintain an action in his own name, "leaving the assignee to assert his

---

[22] *See* Affidavit of David Greeson, **attached hereto as Exhibit L.  Note the Defendant attempts to rely on Exhibits I and J attached to its Motion for Summary Judgment.  However, both are not executed by both parties.**

interest by intervention, and the defendant to plead a prior assignment, if he has knowledge of it, for his own protection." *Id.*

Under FED. R. CIV. P. 17(a)(3), "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." As stated by the Rule itself – even if Gateway's assignment is determined to make Edge the real party in interest, which Plaintiff does not admit, Defendant's claim for dismissal would *remain* improper, and violates not only the Tenth Circuit's precedent as set by *Hoeppner*, as discussed below, but Rule 17 itself. Defendant raised the specific issue of this assignment for the first time in the instant motion.

Aside from being improper under Rule 17(a)(3), Defendant's motion does not follow the Tenth Circuit's ruling in *Hoeppner Const. Co. v. U.S. for use of E.L. Mangum, et al.* One of the issues before the court in *Hoeppner* was the assignment by a project's subcontractor of unpaid amounts due to that subcontractor to its surety, Aetna. *Id*. at 110. The issue of whether the subcontractor or Aetna was the real party in interest was raised by the general contractor's surety, concerned that where the assignor/subcontractor brings the claim against the general contractor (and it's surety) for unpaid amounts, they could be found liable and then subsequently be found liable again under the assignment to the assignee, and essentially be forced to pay the same amounts twice.[23] The general contractor's surety argued that "the subcontractor cannot recover

---

[23] *See Sable Cove Condo Ass'n & Edge Constr., LLC v. Owners Ins. Co.*, Case No. 1:14-cv-00912-MJW, both assignee and assignor filed suit as individual Plaintiffs alleging the same causes of action arising out of the same occurrence. Defendant argued that both Plaintiff's cannot recover for the same cause of action. Assignee Edge in that case asserted its claim over assignor Sable Cove, and due to that intervention, the court dismissed Assignor's claim.

against the prime contractor and its surety until the rights of Aetna are either released or adjudicated," and "that they cannot be adjudicated in this action because Aetna is not a party; and that the prime contractor cannot be required to pay the same amount twice." *Hoeppner*, 287 F.2d at 112.

Where a party to an action faces a situation like the one here, which is nearly identical to *Hoeppner*, the Tenth Circuit has laid out the proper remedy, and the result of failure to follow these steps. There are three steps that party must take, that party must:

1.  Plead specifically the assignments;

2.  Ask that the assignee be made a party, **and**

3.  Seek to have the rights of all parties adjudicated in a manner that which would effectively foreclose the possibility of double payment.

*Id*. In *Hoeppner*, the general contractor's surety "did not proceed in that manner," and "made no effort to have Aetna joined as a party to the action." *Id*. The court then held that **"[h]aving failed to proceed in that manner, any defense in the nature of lurking danger of double-payment in the situation was waived.** (emphasis added)**"** *Id.* Here, we face a nearly identical situation. Defendant has raised this specific assignment for the first time in the instant motion, even though it is not specifically plead in their answer.[24] However, even if the Court finds this satisfies the first requirement, there is no question that Defendant has completely failed to follow the second and third requirements. Under the well settled 10th Circuit precedent, Defendant's failure to follow the procedure warrants one single conclusion – Defendant has waived this issue entirely, and the court should deny its motion.

---

[24] *See* Defendant's Original Answer and Exhibit I to Defendant's Motion for Summary Judgment

### 2.      *An entire assignment was not made*.

The assignment at issue does not assign the *entire* insurance claim over to Edge. Any arguable assignment, in this mater, is made when proceeds are not paid.

In this case, Edge made the bulk of the repairs; however, the City of Aurora found code violations, which triggered additional repairs that have not been completed.[25] David Greeson testified in his affidavit that "even if the assignment were in place, it would only assign that portion of the claim represented by the work that had been done by Edge."[26] As the Code Compliance repairs have not been made and are the main issue in this litigation, no assignment to Edge from Gateway has occurred under the terms of the contract.  The assignment is not for all amounts due under the claim, instead it is for those amounts owed for repairs made by Edge. *See Id*. at 112 ("Since Aetna [assignee] did not have effective assignments from the subcontractor for *all funds due and to become due the subcontractor*, the action was maintainable for the use and benefit of the subcontractor."). Here, Edge was not assigned *all funds due*, only those that went unpaid for repairs it has already completed. Therefore, any amounts paid by the insurer that relate to work that has not been completed are not subject to the assignment. Because Gateway has not assigned the *entire claim*, and because Edge has ratified Gateway's position, Gateway can still maintain an action in its own name. *Hoeppner*, 287 F.2d at 112.

### 3.      *Edge has ratified the fact that Gateway has the authority to prosecute the suit in its own name.*

David Greeson, the owner of Edge Construction, testified, by affidavit, Gateway has the right to pursue the claims against the Defendant.[27]

---

[25] Exhibit O - Deposition Transcript of Dustin Wade Greeson, pp. 114:7-114:21.
[26] Exhibit L.
[27] Exhibit L**.**

In reviewing a contract, it is the court's primary obligation to effectuate the intent of the parties to that contract. *Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. Ct. App. 2008). Edge states it was the intent of the parties for Gateway to have full authority to prosecute the claims on its own behalf.

The evidence before the Court, straight from the only two parties to the contract, is that it was the intent of the parties to that contract that Gateway, ***not Edge***, bring the claims for insurance proceeds against Defendant. Defendant, a non-party to the contract can point to nothing either in the language of the contract, nor in the record, evidencing that this is not the intent of the parties. To the extent the Court finds, however, that this is not the intent, ***Edge Construction testified by affidavit that it disavows, rescinds, and voids those rights.*** The contract assigns the benefits once received, the contract does not relinquish the right in which to bring a lawsuit to benefits that under the contract Gateway is entitled to receive. Whether or not Edge Construction has a claim to those benefits once paid to Gateway is between Edge and Gateway, and is not a ripe or justiciable dispute before the court.

This further demonstrates that Edge Construction has ratified Gateway proceeding with the claim. *See Audio-Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 718-19 (10th Cir. 1976). In that case AVMC alleged at trial that Omni was not the real party in interest under an assignment made by Omni to its bank. Counsel for Omni maintained that Omni was at all times the real party in interest; however, he nonetheless effected a reassignment to Omni by the bank, of the bank's interest. *Id.* at 719. The bank's president also testified and "otherwise ratified the bringing of the action by Omni." *Id.* The Tenth Circuit then held that "under such circumstances the trial court properly rejected the argument that Omni was not the real party in interest." *Id.* Here, there is no

question that Edge Construction has ratified the action brought by Gateway; therefore, any argument that Gateway is not the real party in interest should likewise be rejected.

### 4.     *The condition precedent to trigger assignment has not yet occurred*.

Here, as Defendant states, there are two conditions precedent to trigger the assignment of the post-loss benefits to Edge Construction. The first is that Edge must make repairs to the property, and the second is that the insurer must have not properly pay for those repairs.  Both conditions must be present in order for the assignment to trigger.

Plaintiff does not dispute that Defendant has not *yet* made the proper payments; however, the issue of proper payment is the basis of this litigation. Assignment, if any, would only be triggered by a determination of what amounts were owed under the policy and that the Defendant did not pay those amounts. Moreover, if a trial determines that Plaintiff's damages were not covered under the policy, then Defendant would not have failed to make proper payment as none would be due. Edge would then be released from its agreement not to place a lien on the property as there would be no insurance proceeds, and can then pursue its available remedies against Gateway for any work performed. The point being – Defendant's ultimate non-payment has not yet occurred.

## B.     Lack of Prejudice-Waiver

Under the notice-prejudice rule, an insured who gives late notice of a claim to his or her insurer does not lose coverage benefits unless the insurer proves by a preponderance of the evidence that the late notice prejudiced its interests.  *Craft v. Philadelphia Indemnity Insurance Company,* 343 F.3d 951 (S Ct. Colo. 2015) *citing Friedland v. Travelers Indem. Co*., 105 P.3d 639, 643 (Colo. 2005).  The Defendant claims that it received late notice of additional costs due to

Code Compliance.  However, the evidence shows that the Defendant had accepted coverage and the Plaintiff was in constant communication with the Defendant related to the repairs.  The Plaintiff was in the process of completing repairs when the City of Aurora issued code violations for the project.  Plaintiff immediately notified the Defendant and the Defendant actually accepted coverage and attempted to issue insufficient payment.  The Defendant never argued prior to litigation or properly plead any claim that it was prejudiced by alleged late notice.  The Defendant has offered no evidence showing it was prejudiced by the alleged late notice, which is fatal to its Motion.

Defendant was on notice of the code issues within twenty-one days of the expiration of the two year limitation and in fact accepted coverage and paid additional amounts for "enforced ordinance items" after that time period had expired.[28] Defendant, after the expiration of this two year limitation, accepts coverage for this repair, and on July 8, 2014, nearly five weeks after the two year period had ran, made payment under "enforced ordinance items."[29] During the remainder of the adjustment, while additional code items were being claimed, at no time before March 9, 2016, did Defendant attempt to argue that Plaintiff was not entitled to code coverage due to this exclusion and in fact had made payments to Plaintiff under this very endorsement after the time period had elapsed.

Waiver is the intentional and voluntary abandonment of a known right. *Board of County Com'rs of Larimer County in State of Colo v. Guarantee Ins. Co.* 90 F.R.D. 405, 408 (D. Colo. 1981). Even absent n express intent not to waive a defense, waiver may result from the insurer's

---

[28]  Ex. D.
[29] *Id*.

conduct. Id. at 409. Where an insurer, by its conduct, has lead the insured to believe that the loss will be paid or adjusted, an insurer has waived its limitations period. *Aimoneto v. Nat. Union Fire Ins. Co. of Pitt., Pa.*, 365 F.2d 599 (10th Cir. 1996). While a statute of limitations is not a policy defense that can be waived, the limitations provision cited by Defendants is a policy defense that can be waived. *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1102 (Colo. App. 2005) (cert. denied). Defendant's conduct in continuing to adjust the ordinance or law coverage and making payment after the limitation had expired (all the while making no mention whatsoever about the limitation until the instant motion), clearly evidences waiver on the part of Travelers as to that provision.

**C.     Plaintiff Complied with Policy Conditions**

The issues, in Exhibit **W** ("*Sable Cove*") to the Defendant's Motion for Summary Judgment, are distinguishable as follows:

1. *Sable Cove* was brought in the name of Edge Construction and Edge was asserting it's rights against the insured; whereas, this matter is brought in the name of Gateway, the insured;

2. In *Sable Cove*, all of the work was completed; therefore the assignment was complete; in the instant matter, all of the work is not completed.

3. *Sable Cove* turned on a Draft Estimate with overhead and profit and Revised Estimate, which did not include overhead and profit; whereas, in the instant matter the Plaintiff has submitted both evidence of repairs and an Estimate for the Repairs required for code compliance supported by an Engineering report.

4.   In *Sable Cove*, the Plaintiff apparently refused to provide some documentation that existed; whereas, the Plaintiff in the instant matter has provided all of the documents in its possession and control and even undertook the additional expense of obtaining an estimate for code compliance backed by an engineering report.

The Plaintiff, in the instant matter, cannot make the repairs until the issue between itself and the Defendant is resolved and paid by Defendant.  Further, the issue of code compliance did not some to the attention of any of the parties until the City of Aurora issued a citation.  This issue was immediately brought to the attention of the Defendant and soon thereafter the Defendant received an estimate backed by an engineering report, which outlined in detail the cost and basis for code compliance. The Defendant instead decided an arbitrary number for code compliance and ignored the Plaintiff's estimate and engineering report.

Further, the Defendant attempts to argue that Plaintiff has failed to cooperate and provide proper documentation of the repairs needed to comply with the Code.  However, the documents requested by the Defendant do not exist as the repairs for code compliance have not been made. Plaintiff at its own expense has provided the Defendant with an estimate backed by an Engineering report.  The Defendant even agrees the Plaintiff is not required to undertake the expense of creating a report for the Defendant to properly adjust the claim.[30]  Despite the fact the Plaintiff has provided an estimate backed by a report, the Defendant arbitrarily refuses to pay the claim and only offers late filed conclusory opinions, as to why it did not.

**D.**     **Gateway Proved its Damages-The Existing codes in effect in the City of Aurora result in an increased cost to repair Plaintiff's damaged property and these code requirements have been enforced, triggering coverage**.

---

[30] Exhibit N-Deposition of William Wade Ledbetter, pp. 43:5-44-16.

During the repair process at the property, per the course of typical construction projects, Aurora City inspectors visited and inspected the property to ensure compliance with applicable building codes. Periodically, as a means of enforcing the applicable building codes, these inspectors would issue notices of violations, and would identify the code area for which there was a violation, and issue an instruction to bring the applicable area "up to code." Specifically, the City of Aurora issued a Notice of Violation, regarding code section "Roof 146-1106(D).[31]

In this case, Travelers agreed that hail caused damage to the one membrane (TPO) roof, and agreed that this roof warranted full replacement. Travelers also agreed that the mansard roofs were damaged by wind, and needed to be replaced as well. It is these repairs that trigger the code issues requiring additional work to bring the structure up to code.

Code requires full replacement of the low-slope roofs on three remaining buildings.[32] Mr. Irmiter's conclusions regarding the code requirements are consistent with the language contained in Gateway's Violation Notice requiring the roofs be weatherproof and watertight, and that any deteriorated or rotting boards be addressed.[33] The city's Violation Notice demonstrates that the issues regarding the leaking roof had to be addressed by Gateway or they would be in violation of city code.[34]   Moreover, such cost to determine compliance certainly results in an "increased cost

---

[31] Exhibit **"I"**, City of Aurora Notice of Violation.

[32] Plaintiff incorporates by reference Plaintiff's Motion for Summary Judgment as fully set forth herein by reference. *See Also* Exhibit "C" Travelers Estimate (Exhibit 35 to Irmiter's Depo) Exhibit "K" Affidavit of Thomas J. Irmiter at B-1, pp. 7-8. *Id.* B-1 at 8 and B-5; *citing* International Building Code 2009 (seventh printing), Chapter 1 Part 2 Section 104.11, http://publicecodes.cyberregs.com/icod/iebc/2009/icod_iebc_2009_1_par039.htm (last visited 2/17/2016) (An alternative material, design, or method of construction shall be approved where the code official finds that the proposed design is satisfactory and complies with the intent of the provisions of this code, and that the material, method, or work offered is, for the purpose intended, at least the equivalent of that prescribed in this code in quality, strength, effectiveness, fire resistance, durability, and safety).

[33] Exhibit "I" Violation Notice.

[34] Exhibit "A" Policy of Insurance p. 19

14

of construction" which is covered under the Policy. [35] Because the sheathing must be removed to address the wetness issue, the attic insulation will be exposed, revealing the deficiency, which in turn must be addressed as well.[36]

Plaintiff provided the Defendant with sufficient evidence of the cost for Code Compliance.[37]

## E.    Plaintiff Timely Raised Code Compliance

In *Dupre v. Allstate Insurance Company*, 62 P.3d 1024, 1028 – 1029 (Colo. App. 2003), the Court found, the duty of good faith owed by the insurer to the insured requires that it not act to prevent the occurrence of conditions to its performance. *Id. citing Navajo Freight Lines, Inc. v. Moore*, 170 Colo. 539, 543, 463 P.2d 460, 462 (1970)("it is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of that failure"); see also Restatement (Second) Contracts § 245 cmt. a (1981)( ***Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing ... may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence***.); *cf. Strader v. Beneficial Fin. Co.*, 191 Colo. 206, 551 P.2d 720 (1976)(where a party's acts or omissions contribute to the running of a statute of limitations, the party may  be prevented from raising that defense by the doctrine of equitable estoppel).   ***Further, duty of good faith and fair dealing extends to litigation.*** *See, Rakin v. Fidelity Nat. Property & Casualty Inc. Co.*, 863 F.Supp.. 1107, 1112 (D. Colo. 2012).

On June 27, 2014, Travelers noted that the City of Aurora had an issue with the "flashing between the termination of the flat roof and the mansard roof.[38] Travelers estimated the amount to

---

[35] *Id.* at B-1 pp. 8 – 9.

[36] Exhibit "J" at p. 149:10-19.

[37] Ex. K.
[38] Exhibit "D" Claim Notes p. 6 (TIC 000184 - 000185).

comply with the City to be $35,188.48.[39] Travelers did not maintain that this "Ordinance additional cost" was not covered.[40]

On July 29, 2014, Plaintiff's Public Adjuster Peter Ridulfo notified Travelers that there were outstanding items that required attention due to the City Codes.[41] Travelers notes state that "[f]rom our perspective the claim was estimated and paid."[42] Travelers then requested documentation as to each code item being claimed.[43]

On August 21, 2014, Travelers re-inspected the building with Mr. Ridulfo, noting its belief that the repairs were properly scoped and there are no pending code issues.[44]

On December 12, 2014, Travelers' Adjuster Brad DuPuis notified Mr. Ridulfo that they disagree that any additional repairs are necessitated by the code, and that they had issued sufficient payments.

Once the Plaintiff had notice of the Code violations it diligently worked with Travelers to provide information related to additional scope and costs to comply with the code.

For all the reasons stated above, the Defendant's Motion for Summary Judgment should be denied.

WHEREFORE premises considered, Plaintiff respectfully requests this Court enter an order DENYING Defendant's Motion for Summary Judgment.

---

[39] *Id*. at TIC 000185.

[40] *Id*.

[41] *Id*. at TIC 000183.

[42] *Id*.

[43] *Id*.

[44] *Id*. at TIC 000183.

Respectfully submitted,

By:     */s/ Robert D. Green* _____

      Robert D. Green, #46875
      Hunter M. Klein
      **ROBERT D. GREEN & ASSOCIATES, P.C.**
      440 Louisiana Street, Ste. 1930
      Houston, Texas 77002
      Telephone:  (713) 654-9222
      Facsimile:  (713) 654-2155
      E-mail: green@greentriallaw.com
      E-mail: klein@greentriallaw.com

By:     */s/ Daniel P. Barton* _____
      Daniel P. Barton
      Wayne Collins
      **BARTON LAW FIRM**
      1201 Shepherd Drive
      Houston, Texas 77007
      (713) 227-4747 (phone)
      (713) 621-5900 (fax)
      E-mail: dbarton@bartonlawgroup.com
      E-mail: wcollins@bartonlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2016, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

      Amy M. Samberg
      Jeri J. Wettestad
      Amy L. Biles
      Thomas H. Blomstrom
      **SNELL & WILMER L.L.P. – DENVER**
      1200 17th Street
      Suite 1900
      Denver, Colorado 80202

      */s/ Daniel P. Barton* _____
      Daniel P. Barton